UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
EASTERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| GENIE RANAE QUESINBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0: 13-088-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Genie Ranae Quesinberry ("Quesinberry" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 13, 15] Quesinberry argues that the administrative law judge ("ALJ") assigned to her case erred in considering the evidence of her impairments, by discounting her credibility, and by relying on an improper hypothetical in determining that she could perform work in the national economy. Quesinberry seeks reversal of the ALJ's decision and an award of benefits. Alternatively, she requests remand for further consideration of her claims. However, the Commissioner contends that the ALJ's decision was proper and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Quesinberry.

**I.**

On October 20, 2010, Quesinberry applied for Supplemental Security Income ("SSI") under Title XVI of the Act. [*See* Administrative Transcript, p.10; hereafter "Tr."] She alleges a disability beginning July 17, 2009.[1] [Tr., p. 194] Quesinberry's application was denied initially and upon reconsideration. [Tr., p. 46] On September 1, 2011, a hearing was held before ALJ Jerry Meade in Huntington, West Virginia. [*Id.*] Quesinberry appeared and testified, represented by Pamela Hofer, a non-attorney representative. [*Id.*] Impartial vocational expert ("VE") Leah Salyers also testified at the hearing. [*Id.*]

Quesinberry was twenty-four years old at the time of the ALJ's decision. She has an eleventh grade education, and has past work experience in a tobacco warehouse and as a cashier. [Tr., p. 68, 322] She claims to be disabled under the Act due to obesity, anxiety, and depression. [Tr., pp. 197-203, 213-221, 234-238] After reviewing the record and testimony presented during the administrative hearing, the ALJ concluded that Quesinberry suffered from the severe impairments of obesity, major depressive disorder, panic disorder with agoraphobia, and generalized anxiety disorder.[2] [Tr., p. 48] Notwithstanding those impairments, the ALJ determined that Quesinberry maintained the residual functional capacity ("RFC") to perform medium, light, and sedentary work, with the additional limitations that:

---

1  Quesinberry had a prior unfavorable decision issued by ALJ Rosanne Dummer on July 20, 2009. [Tr., p. 46] ALJ Meade found that, because her current alleged onset date is prior to the date of her previous determination, the proper date for consideration of onset of disability is July 21, 2009. [*Id.*]

2  The ALJ also denied Quesinberry's written and oral request for IQ testing, finding that Quesinberry reported no history of special education classes, and that the consultative examiner had opined that her IQ was in the average range. [Tr., p. 46]

> [Quesinberry] can never climb ladders, ropes, or scaffolds. She has a moderate limitation in her ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; interact appropriately with the general public; and respond appropriately to changes in the work setting.

[Tr., p. 51]

In addition, the ALJ found that:

> [Quesinberry] is able to remember and understand simple and detailed instructions; sustain attention and concentration for two-hour segments at a time; tolerate contact with coworkers and supervisors in a nonpublic setting; and adapt to changes as needed.

[Tr., p. 51]

Based on the testimony of VE Salyers, the ALJ determined that Quesinberry could not perform past relevant work. [Tr., p. 54] However, after considering the Claimant's age, education, work experience, and RFC, he found that she could perform other work that exists in significant numbers in the national economy, such as laundry worker, product packager, office cleaner, clerical positions, machine monitor, and product inspector. [Tr., p. 55] Based on this finding, the ALJ concluded that Quesinberry was not disabled. As a result of the ALJ's assessment, Quesinberry was denied SSI benefits. [Tr., pp. 55, 56]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*,

459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Quesinberry asserts that ALJ Meade erred in a number of ways. First, she argues that the ALJ erred in considering the objective evidence related to her mental limitations and obesity to determine her RFC. Next, she argues that the ALJ erred in finding her testimony to be not completely credible. Finally, she argues that the questions posed to the vocational expert did not include all of her limitations.

**A.    Objective Evidence**

### i. Mental Limitations

Quesinberry first argues that the ALJ erred in considering the medical evidence to assess her mental RFC. [Record No. 13-1, p. 7] She contends that she has suffered from severe depressive and anxiety disorder since 2008 and that these disorders render her unable to work. [*Id.*] Quesinberry further asserts that the ALJ erred in his "selective" treatment of the objective evidence of record. [*Id.*, p. 10]

The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 404.1520(a)(4) (outlining the five-step sequential evaluation process used to ascertain whether a claimant is disabled). *See also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly reserved for the Commissioner."). In making an RFC determination, an ALJ must consider the medical evidence, non-medical evidence, and the claimant's credibility. *See* 20 C.F.R. §§ 404.1545(a)(1), (3) & 404.1546(c).

As noted by the Commissioner, Quesinberry's medical treatment history from the applicable time period is limited.[3] [Record No. 15, p. 3] However, the ALJ necessarily relied upon Quesinberry's previous treatment records to determine her RFC.[4] [Tr., p. 49] For example, he considered April 15, 2010, treatment notes from Pathways, Inc., a mental health clinic.

---

3      Quesinberry's present claim includes her application date of October 20, 2010, through October 5, 2011, the date of the ALJ's decision. [Tr., p. 43, 99]

4      An ALJ must consider several factors when weighing medical opinions. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). As a general rule, the ALJ gives "more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

Quesinberry's treating therapist during that time, Catherine Hyden, MS, LPA, noted that Quesinberry's motivation was "questionable." [Tr., p. 269] Her notes indicate that Quesinberry "stated that she was interested in signing up for disability" and food stamps. [*Id.*] Quesinberry also requested "a form stating that she was exempt from working" for the food stamp office. [*Id.*] Therapist Hyden further commented that Quesinberry had not been very compliant with her treatment or medication recently. [Tr., p. 264] Despite her allegations of disabling depression, Therapist Hyden noted that Quesinberry was neatly groomed, dressed appropriately, maintained good hygiene, had coherent thoughts with normal speech. [Tr., p. 265] In fact, the only area where Therapist Hyden found impairment was Quesinberry's reliability. [*Id.*] Therapist Hyden assessed Quesinberry with a Global Assessment of Functioning ("GAF") of 55, in the moderate range.[5] [*Id.*]

On December 2, 2010, Dr. Christopher Catt, Psych. D., performed a psychological consultative evaluation. He diagnosed Quesinberry with a depressive disorder and anxiety disorder. [Tr., p. 276] Dr Catt also assessed a GAF score of 60, consistent with moderate symptoms and moderate difficulty in occupational functioning. [*Id.*] Dr. Catt noted that Quesinberry's "stressors" were a lack of money and lack of employment, but noted that Quesinberry has normal coping skills. [*Id.*] Dr. Catt also noted that Quesinberry could understand, remember, and carry out simple, repetitive tasks; could respond appropriately to supervision, coworkers, and work pressures, and could tolerate the stress of day-to-day

---

5    A GAF of 51-60 is consistent with moderate symptoms and moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV-TR, 5th ed. 2000). A range of 41-50 is associated with serious symptoms or a serious impairment in social, occupational, or school functioning. [Record No. 15, p. 4 n.2]

employment. [*Id.*] He concluded that she was stable on her medication, and that her ability to perform work related functions was not affected by her depressive disorder. [*Id.*]

Eight days later, Quesinberry returned to Pathways, seeking to be admitted to the "Crisis Unit." [Tr., p. 381-84] The counselor who admitted Quesinberry assessed her Global Assessment of Functioning ("GAF") score at 48, in the serious range, an assessment that ALJ Meade considered in evaluating the evidence. [Tr., p. 49] Her stated reason for voluntarily entering the Crisis Unit at Pathways was that she became extremely upset after an argument with her father. [Tr., pp. 431, 432, 439] Ironically, Quesinberry stated that the argument with her father concerned the fact that she was unemployed and was not attempting to obtain employment. [Tr., p. 431]

Later treatment notes from Therapist Hyden indicate that Quesinberry was more compliant with her medication and that her medication was helping her mood. [Tr., p. 26] She also reported a new relationship that made her happy, but that she still has days "occasionally" where she feels sad and cries. [*Id.*] In 2012, she was living with her boyfriend and reported a good relationship with her father. [Tr., p. 29] Throughout her treatment notes, Quesinberry was reported as having average or above average functioning, good self care, appropriate hygiene, and normal coping skills. [Tr., pp. 30, 295-339] The ALJ's opinion demonstrates that he considered all of these treatment notes, including Quesinberry's recent improvements, when determining her functional limitations relating to her mental health. [Tr., pp. 48-51]

In summary, the ALJ did not err in considering the effect of Quesinberry's mental health conditions on her ability to work. The ALJ accepted Quesinberry's diagnoses of major depressive disorder, panic disorder with agoraphobia, and generalized anxiety disorder. [Tr.,

p. 48] He discussed at length Quesinberry's treatment history, including the treatment notes from her various visits to therapists at Pathways. [Tr., pp. 48-50] And he considered the range of GAF scores assessed by Quesinberry's therapists and counselors, and noted that her GAF range was from 48 to 60. [Tr., p. 49] The ALJ also considered Dr. Catt's opinion that Quesinberry's ability to tolerate stress and pressure of day-to-day employment was not affected by her depressive disorder. [Tr., p. 276] In short, substantial evidence supports ALJ Meade's findings regarding Quesinberry's mental RFC.

The Court also concludes that Quesinberry argument that the ALJ erred in discounting the lower end of her GAF scores while assessing her ability to work is without merit. A GAF score, without evidence relating to a claimant's ability to work, does not establish an impairment under the Social Security Regulations. *See Camp v. Barnhart*, 103 F. App'x 352, 354 (10th Cir. 2004). "[N]either Social Security regulations nor case law require[s] an ALJ to determine the extent of an individual's mental impairment based solely on a GAF score. In fact, the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have 'no direct correlation to the severity requirements of the mental disorders listings.'" *Parson v. Astrue,* No. 5:06cv217/RS/EMT, 2008 U.S. Dist. LEXIS 14236, at *7 (N.D. Fl. Jan. 24, 2008) (citing 65 Fed. Reg. 50746-01, 50764-65, 2000 WL 1173632 (Aug. 21, 2000)).

Because the record establishes that the ALJ considered Quesinberry's treatment history at length, and because substantial evidence supports his findings on Quesinberry's mental functional limitations, the Court finds no error with his decision regarding Quesinberry's mental RFC.

### ii. Physical Limitations

Likewise, the Court finds no error with the ALJ's consideration of Quesinberry's obesity as effecting her ability to work. [*See* Record No. 13-1, p. 11.] Quite simply, there is no evidence that Quesinberry's obesity impairs her ability to function physically beyond the limitations that the ALJ assessed. The medical evidence showed that there were "no objective findings" regarding any physical limitations, and that Quesinberry maintains a full range of motion. [Tr., pp. 48, 49] She reported to consultative examiner Dr. Catt that she has "no medical problems." [Tr., p. 274] And she testified that she takes no medication for any physical impairments. [Tr., p. 78] Despite the lack of objective evidence that Quesinberry is physically limited, ALJ Meade gave Quesinberry "the benefit of the doubt regarding her allegations of back pain," and thus limited Quesinberry's work to no more than medium exertional level.[6]

In addition to the objective evidence, Quesinberry's daily reported activities supports the ALJ's physical limitations. Quesinberry testified that she prepares her own meals, does her own laundry, cleans the house, and washes the dishes. [Tr., pp. 74, 75, 77] Treatment notes from her therapist indicate that she walks for fitness, and she successfully lost a significant amount of weight. [Tr., p. 444] Her physical appearance was reported to be neat and appropriate, and her therapists and counselors repeatedly noted that she was able to care for herself and her dog. Although Quesinberry alleges that the ALJ did not properly assess her physical limitations, this assertion ignores the fact that the claimant is required to furnish medical and other evidence to establish her alleged disability. *See* 20 C.F.R. 404.1512(a). The ALJ did not consider

---

6  During her prior claim for disability, the ALJ assigned to that matter found that Quesinberry could perform work at all exertional levels. [Tr., p. 53] Thus, ALJ Meade actually placed greater restrictions on Quesinberry's physical limitations than she was assessed during her last claim.

information about Quesinberry's alleged inability to "bend, stoop, reach, lift, stand, or walk on a regular and continuing basis" because Quesinberry provided no evidence that she was limited in that regard. [Record No. 13-1, p. 12] The ALJ could not weigh evidence that was not provided. Substantial evidence supports the ALJ's decision to limit Quesinberry to medium work.

### B. Credibility

Quesinberry also alleges that the ALJ erred in determining that Quesinberry's allegations regarding her symptoms were not fully credible. [Record No. 13-1, pp. 8-9] Credibility determinations regarding a claimant's subjective complaints of symptoms rest with the Commissioner. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is in a unique position and has a duty to "observe the claimant and judge her subjective complaints," *Buxton*, 246 F.3d at 773, an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001). The ALJ found that Quesinberry's allegations about the intensity, persistence, and limiting effects of her symptoms were not credible because of numerous instances where her testimony conflicted with the evidence of record. [Tr., p. 52]

The ALJ found convincing that Quesinberry was not always compliant with mental health appointments and medications. [*Id*.] Quesinberry testified that she presented to the Crisis Unit in December 2010 after a conflict with her father. [Tr., p. 73] She testified that she was crying non-stop, vomiting, and could not eat or drink. [*Id*.] However, in the admission records from that time, she noted that all of her psychological problems were related to her living conditions, stated that she had good appetite and sleep patterns, and appeared friendly, polite, cooperative,

-11-

and even pleasant. [Tr., pp. 431, 432] In addition, although Quesinberry reported to Dr. Catt in 2010 that she did not drink alcohol, she also reported that she drinks on occasion to get drunk. [Tr., pp. 53, 274]

"It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence" and "testimony concerning . . . symptoms and limitations [that] is not supported by the evidence of record and is deemed not fully credible." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 669-70 (6th Cir. 2009). Because the ALJ properly stated his reasons for determining that Quesinberry was not fully credible, and because substantial weight supports this determination, the Court defers to ALJ Meade's findings regarding Quesinberry's credibility.

### C. Hypothetical Questions

Finally, Quesinberry argues that ALJ Meade erred in presenting an incomplete hypothetical to the vocational expert. [Record No. 13-1, p. 13] She argues that VE Salyers' response to an incomplete listing of her functional limitations cannot be substantial evidence in support of the ALJ's decision. [*Id.*]

It is well-established that a hypothetical question posed to a vocational expert "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster*, 348 F.3d at 356). The vocational expert's testimony relies on the ALJ's assessment of what the claimant "can or cannot do." *Id.* Additionally, the ALJ is permitted to rely on the vocational expert's answer to a hypothetical question only to the extent the assumptions included in the hypothetical are supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779

(6th Cir. 1987). The answers to these questions are substantial evidence "only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id*.

Here, the ALJ properly described the limitations that were supported in the record. He posed a hypothetical describing the Claimant's age, education, and work experience, and further described her moderate physical and mental limitations.[7] [Tr., p. 79] VE Salyers testified that past work would be precluded in such an individual, but that other work would fit such a claimant's profile, such as laundry worker and product packager at the medium level, unskilled clerical work at the light level, and product inspector or machine monitor at the sedentary level. [Tr., p. 81] The vocational expert testified that all of these positions exist in significant numbers in the national economy. [*Id.*] ALJ Meade relied on the objective medical of record, Quesinberry's subjective complaints, and his determinations regarding Quesinberry's credibility when posing hypothetical questions to the vocational expert. As the Court determined, his findings regarding Quesinberry's RFC and credibility are supported by substantial evidence. Accordingly, the questions he posed to the vocational expert and her responses constitute

---

7   Specifically, the ALJ described a hypothetical individual:

of [Quesinberry's] age, education, and work experience, who is able to perform medium work; can never climb ladders, ropes, or scaffolds. And due to mental impairments the individual has moderate limitation in the ability to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, and be punctual within customary tolerances, to interact appropriately with the general public, and to respond appropriately to changes in the work setting, and despite those limitations the individual is able to understand and remember simple and detailed instructions, can sustain attention and concentration for two hour segments of time, can tolerate contact with coworkers and supervisors in a non-public setting, and can adapt to changes as needed.

[Tr., pp. 799-80]

substantial evidence in support of his determination that Quesinberry could perform other work existing in significant numbers in the national economy.

### IV.

Although Quesinberry suffers from some impairments, she has not established that her impairments, either singularly or in combination, are severe enough to warrant Social Security Income. The ALJ did not err in his evaluation of the evidence. Viewing the record as a whole, substantial evidence supports ALJ Meade's determination that Quesinberry is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Genie Ranae Quesinberry's Motion for Summary Judgment [Record No. 13] is **DENIED**.

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 15] is **GRANTED**.

(3) The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 11th day of February, 2014.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge